UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

Case Number: 08-20917-CIV-MORENO

SEASPECIALTIES, INC., a Florida Corporation;
and HOMARUS/MARSHALL SMOKED FISH,
INC., a wholly owned Subsidiary of
SeaSpecialties, Inc.,,

    Plaintiffs,

vs.

WESTPORT INSURANCE CORPORATION, a
foreign corporation,

    Defendant.
_____/

## ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

THIS CAUSE came before the Court upon the Defendant's Motion to Dismiss **(D.E. No. 3)**, filed on **April 4, 2008**.

THE COURT has considered the motion, the response, and the pertinent portions of the record, and being otherwise fully advised in the premises, it is

**ADJUDGED** that the motion is GRANTED in part as to the bad faith claim. The bad faith claim is dismissed without prejudice with leave to refile once the underlying breach of contract action is adjudicated. It is also

**ADJUDGED** that the motion to dismiss is DENIED as to the application of the exclusion. Defendant shall respond to the complaint by no later than **November 25, 2008**.

**I. Background**

Plaintiffs, SeaSpecialties, Inc. and its subsidiary Homarus/Marshall Smoked Fish, Inc., filed this action for breach of an insurance agreement and statutory bad faith when the insurers refused to cover a loss of property from listeria monocytogenes adulteration. Plaintiffs claim the "all-risk" policy provided by Defendants covers the listeria damage to its fish products.

In January 2005, the Florida Department of Agriculture and Consumer Services conducted an inspection of the SeaSpecialties production facility in North Miami. The agency discovered the presence of listeria in certain ready-to-eat fish products. Due to the positive test, SeaSpecialties recalled its "Smoked Nova Salmon" and suspended production while investigating the listeria's source. After further testing, SeaSpecialties had to recall its "Sliced Smoked Salmon" product. SeaSpecialties proceeded to implement safety measures that proved insufficient in March 2005 when it had another recall and halted its operations. SeaSpecialties ultimately filed for bankruptcy.

Defendants have moved to dismiss the complaint arguing that Plaintiffs failed to join an indispensable party-- Food Industry RPG, Inc. ("FIR"), the party who procured the insurance policy on behalf of Plaintiffs, one of FIR's member companies. Secondly, the motion argues the policy excludes coverage for listeria contamination. Finally, Defendants have moved to dismiss without prejudice the bad faith claim pending resolution of the underlying lawsuit.

Since filing the motion to dismiss, the parties have reached an agreement with the indispensable party -- Food Industry RPG, Inc. ("FIR"). The Court approved the parties' stipulation that FIR holds an initial layer of risk retention applicable to the insurance claim at issue in this case. Specifically, should there be an adjudication in favor of SeaSpecialties in this case, FIR agrees to pay up to $240,000 in damages. The stipulation obviates the need for FIR to be included in this

litigation. Accordingly, the motion to dismiss based on the failure to join the indispensable party is moot. What remains at issue is whether the policy's exclusion bars coverage.

## II. Legal Standard

On a motion to dismiss, the Court must view the complaint in the light most favorable to the plaintiff. *Glover v. Ligett Group, Inc.*, 459 F.3d 1304, 1308 (11th Cir. 2006). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007) (citations omitted). A complaint must have "enough facts to state a claim to relief that is plausible on its face"; if it does not "nudge[] the[] claims across the line from conceivable to plausible, [it] must be dismissed." *Id.* at 1974. Pleadings by *pro se* plaintiffs, however, are held to a less stringent standard and will be liberally construed. *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998).

## III. Legal Analysis

*A. Does the policy provide coverage?*

At issue in this case is whether an all-risk policy provides coverage for loss due to listeria contamination or whether an exclusion in the policy applies. Typically, an "all-risk" policy provides recovery for all fortuitous losses unless the loss is specifically excluded. *Fayad v. Clarendon Nat'l Ins. Co.*, 899 So. 2d 1082, 1085 (Fla. 2005) (holding that the purpose of an all-risk policy is to protect against all risks except those specifically excluded). To recover under such a policy, the insured bears a limited burden: it need only show that a loss occurred and that the loss was fortuitous. *See Church of the Palms-Presbyterian (U.S.A.), Inc. v. Cincinnati Ins. Co.*, 404 F. Supp.

2d 1339, 1341 (M.D. Fla. 2005). The burden then shifts to the insurer to prove that an express exclusion applies. *Id.*

The all-risk clause in this policy contains the following language:

> This policy insures against all risk of direct physical loss or damage except as excluded, to covered property while on Described Premises or on land within 1000 feet thereof (except as respects pipelines owned or operated by the Insured) and while in the due course of Transit, provided such physical loss or damage occurs during the term of this policy.

Surely, this clause is broad and the allegations in the complaint sufficiently state that a fortuitous loss occurred. The real issue is whether an express exclusion applies.

Defendants argue for dismissal based on the policy's pollution exclusion, which states:

> C. Pollution Exclusion
>
> The policy does not insure against loss or damage due to the discharge, dispersal, seepage, migration, release o[r] [sic] escape of Pollutants, (except as provided under the Radioactive Contamination coverage provision of this policy), unless the discharge, dispersal, seepage, migration, release or escape is directly caused by physical loss or damage not otherwise excluded.

The policy goes on to define Pollutants to include bacteria:

> O. Pollutants
>
> Any solid, liquid, gaseous or thermal irritant or contaminant, including, but not limited to smoke (except smoke resulting from the sudden, unusual and faulty operation of any stationary furnace located on the Described Premises, but not including accumulative damage or depreciation), vapor, soot, fumes, acids, alkalis, chemicals, bacteria, fungi, virus, mold, spores, vaccines, and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

Plaintiffs urge the Court that the exclusion to the policy presents an affirmative defense and

is not grounds for a motion to dismiss. Because it has not pled the cause of the listeria's presence (i.e. how it got into the food products), Plaintiffs claim the Court cannot go beyond the four corners of the complaint to determine whether the listeria got into the food in a manner that was "due to the discharge, dispersal, seepage, migration, release o[r] [sic] escape." Moreover, Plaintiffs argue Defendant bears the burden of proof to show the exclusion applies and the listeria's presence was due to its "discharge, dispersal, seepage, migration, release, or escape."

A Court can only dismiss a complaint under Rule 12(b)(6) "when its allegations on-their-face show that an affirmative defense bars recovery on that claim." *Marsh v. Butler County*, 268 F.3d 1014, 1022 (11th Cir. 2001). At first glance, the pollution exclusion appears to be such an affirmative defense. That being said, however, the Plaintiffs attached a copy of the entire policy to the complaint as required by Florida law.

The Court reviewed the policy to determine whether the exclusion applies and of course, the Court is obligated to give all the provisions of the policy meaning. *U.S. Fire Ins. Co. v. J.S.U.B., Inc.*, 979 So. 2d 871, 877 (Fla. 2007) ("in construing insurance policies, courts should read each policy as a whole, endeavoring to give every provision its full meaning and operative effect.") (internal citations omitted). Though the parties do not reference conflicting clauses, the Court finds the policy contains a provision that creates ambiguity as to the extent of the exclusion's application. In a separate section that details expenses that are covered, the policy states:

> E. Pollutant Cleanup and Removal
>
> The necessary and reasonable expenses actually incurred by the Insured to cleanup and remove Pollutants from land or water confined to Described Premises if the discharge, dispersal, seepage, migration, release or escape of the Pollutants is directly caused by physical loss or damage not otherwise excluded which occurs during the term of this policy, provided such expenses are reported to the Insurer within

      one hundred eighty (180) days of the date of direct physical loss or damage, including the necessary and reasonable expenses incurred by the Insured to test for, monitor or assess the existence, concentration or effects of Pollutants following the physical loss or damage, but only for the period of time that such expenses are actually incurred during the actual cleanup and removal of Pollutants from the land or water.

The two clauses (i.e. Pollutant Exclusion and Pollutant Cleanup and Removal) appear at odds to a certain extent. One excludes coverage for pollutant damage unless it is covered elsewhere in the policy. The other provision provides coverage for clean up and removal of pollutants unless the policy otherwise excludes it.

    In reviewing the policy as a whole, it is unclear that the pollutant exclusion bars total coverage at this stage of the litigation. Accordingly, the motion to dismiss is denied as to the application of the exclusion.

    DONE AND ORDERED in Chambers at Miami, Florida, this 5th day of November, 2008.

_____
FEDERICO A. MORENO
UNITED STATES DISTRICT JUDGE

Copies provided to:

Counsel of Record